UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARK ALLEN #351233,

        Plaintiff,

v.

UNKNOWN CORRIGAN, et al.,

        Defendants.
_____/

Case No. 2:20-cv-00173

Hon. Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This is a civil rights action brought by state prisoner Mark Allen pursuant to 42 U.S.C. § 1983. Allen's unverified complaint alleges that prison officials failed to protect him from an assault by another inmate, in violation of his Eighth Amendment rights, while he was confined at the Chippewa Correctional Facility (URF). (ECF No. 1.) Defendants in the case are Assistant Deputy Warden (ADW) Corrigan and Resident Unit Manager (RUM) Corey-Spiker. Allen says that Corrigan and Corey-Spiker were members of the Security Classification Committee (SCC) at URF. (*Id.*, PageID.2.)

Allen says that he was assaulted by other prisoners while confined at other MDOC prisons beginning in 2015. These earlier assaults alleged took place at the Saginaw Correctional Facility (SRF) and the Michigan Reformatory (MRI). (*Id.*, PageID.2-3.) Allen attributes these assaults to prisoner Lackey, #281407. (*Id.*)

Allen was transferred to URF on July 21, 2019. (*Id.*) Allen says that, on April 30, 2020, he told ADW Corrigan and RUM Corey-Spiker, who were at that time members of the SCC, that he had previously been assaulted by prisoner Lackey and that Lackey was now confined at URF on the East Side. (*Id.*) Allen says he told Defendants that it was unsafe for him to be confined on the East Side with Lackey. He says he asked for a transfer to URF's West Side. (*Id.*, PageID.4.)

Allen says Defendant denied his request to move to the West Side of URF and he remained on the East Side of URF. Allen says that later that same day – April 30, 2020 – he was assaulted with a weapon by prisoner Lackey while he was using the unit bathroom. (*Id.*)

Allen says that on May 1, 2020, the day after the alleged assault, he informed Sergeant Montie that he had been assaulted. Allen included with his complaint a copy of the Michigan Department of Corrections (MDOC) investigation report associated with this incident. (ECF No. 1-5, PageID.28.) The report indicates that facility video showed that Allen had been stabbed by Lackey in a bathroom. (*Id.*)

Defendants have filed a motion for summary judgment. (ECF No. 11.) They assert that Allen failed to exhaust his administrative remedies prior to filing his lawsuit. Defendants note that Allen did not file a grievance relating to the April 30 assault, and that his earlier grievances were rejected as untimely and did not name Corrigan or Corey-Spiker. In response, Allen argues (1) that he did not have to name the Defendants in a grievance, and (2) that his grievances were exhausted, even

2

though they were rejected, because the MDOC chose to reject the grievances instead of addressing the issues. (ECF No. 15.) Defendants filed a reply. (ECF No. 16.)

The record shows that Allen was pursuing a grievance relating to his security concerns at the time of the assault. This grievance claimed that Allen was at risk of being assaulted by Lackey. Although his grievance did not specifically name Corrigan and Corey-Spiker, that grievance, when combined by Allen's complaint to Corrigan and Corey-Spiker on April 30, certainly was sufficient to put MDOC on notice of the threat and to exhaust his claims. The undersigned respectfully recommends that the Court deny the motion for summary judgment.

**II. Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing

---

1  Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative

4

process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims

internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept.

25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

## IV. Grievances Identified by the Parties

In their motion for summary judgment, Defendants identified two grievances that Allen filed with the MDOC that appear to be relevant. Defendants claim that a review of these grievances will demonstrate that Allen failed to exhaust his administrative remedies on his claim that Defendants failed to protect him on April 30, 2020. These grievances are summarized below.

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| URF-20-03-0901-28e (ECF No. 12-3, PageID.108-112.) | none | Grievances are being dismissed and requests an interpreter | Filed on February 9, 2020, asserting an incident date of November 9, 2015 | Rejected due to being untimely | Rejected | Rejected |
| URF-20-03-0900-28e (ECF No. 12-3, PageID.113-117.) | Sergeant Kosketh | Failure to protect from assault by prisoner Lackey | Filed on March 13, 2020, asserting an incident date of January 2, 2020 | Rejected due to being untimely | Rejected | Rejected |

---

[2] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

9

## V. Analysis

Allen makes two arguments: (1) that he did not have to name the Defendants in a grievance and (2) that his grievances were exhausted, even though they were rejected, because the MDOC chose to reject the grievances instead of addressing the issues. First, Allen is required to properly exhaust his claims, which includes complying with all the MDOC procedural requirements such as timeliness and naming the individuals he is grieving. *Jones*, 549 U.S. at 218-19. When a grievance is procedurally rejected, it is not properly exhausted. *Id.* Also, as Defendants note, Allen is required by MDOC policy to name each individual involved in Step I of his grievance. The MDOC requires a prisoner to identify the individuals being grieved, *Reed-Bey*, 603 F.3d at 324-25, and the subject matter of the grievance. *Mattox*, 851 F.3d at 596.

Allen alleged in his complaint that Defendants failed to protect him on April 30, 2020, and he was assaulted that day. A portion of Allen's complaint is shown below.

> 12. On 4/30/20, the same day that Mr. Allen informed the Security Classification Committee of the imminent danger Mr. Allen would be in if placed on the East Side of the Chippewa Correctional Facility; the Security Classification Committee (SCC) had Mr. Allen released to the East Side of the Chippewa Correctional Facility and into the same Housing Unit as prisoner Lackey#281407. Shortly thereafter Mr. Allen was assaulted with a weapon by prisoner Lackey#281407 in the Housing Unit bathroom.

(ECF No. 1, PageID.4.)

In Grievance **URF-20-03-0900-28e**, it appears that Allen stated that Sergeant Kosketh failed to protect him from assault from prisoner Lackey. That grievance was rejected at each Step of the MDOC grievance process. In addition, in this grievance, Allen asserted an incident date of January 2, 2020, but did not submit the Step I grievance form until March 13, 2020. Thus, that grievance predates the April 30, 2020 conduct alleged in the complaint. A copy of Allen's Step I grievance is shown, in part, below.

[Image of handwritten Step I grievance form]

(ECF No. 12-3, PageID.116.) Although this Step I grievance is extremely difficult to read, the undersigned notes that it appears to assert (1) that Allen has been assaulted numerous times by Lackey, (2) that Lackey was, at that time, present in the same

11

facility with Allen, (3) that Allen was arming himself, (4) that Allen sought protection from Lackey, and (5) that MDOC's failure to protect him constituted a violation of the Eighth Amendment.

The URF Grievance Coordinator – M. McLean – rejected this grievance because it was untimely. (*Id.*, PageID.117.)

Allen repeated these allegations in his Step II appeal of this rejection. (*Id.*, PageID.114.) His Step II appeal, which was written eight days before the assault, on April 22, 2020, is shown below.

[grievance form image]

On May 4, 2020, four days after the assault, URF Warden Horton upheld the Step I rejection. (*Id.*, PageID.115.)

Allen then filed a Step III appeal of the Step II rejection. (*Id.*, PageID.114.) His Step III appeal is shown below. The date of his Step III appeal is uncertain. But in this appeal, he mentioned the April 30 assault as evidence of the threat he faced.

12



The MDOC then upheld the rejections decisions at Steps I and II. (*Id.*, PageID.113.)

Defendants are correct that a review of the grievances filed by Allen shows (1) that his March 2020 grievance was rejected, and (2) that he did not name ADW Corrigan and RUM Corey-Spiker in his grievance. But that does not end the inquiry here. At Step I, Allen identified Sgt. Kosketh as the person to whom he reported the threat. Allen did not indicate that the grievance was against Kosketh, which is the interpretation adopted by Defendants. In addition, Allen clearly was pursuing a grievance concerning the threat posed by Lackey during the relevant time. Indeed, he filed his Step II appeal eight days before the assault and complained about lack of protection. And in his Step III appeal, he pointed to the April 30 assault as evidence of the MDOC's failure to protect him. Furthermore, Allen notified Defendants of the risk posed by his confinement close to Lackey on April 30, the very day of the assault. The undersigned recognizes that Allen did not comply with the formal requirements of the MDOC grievance process. Nevertheless, the undersigned concludes that Allen put the MDOC on notice of the threat he faced during the relevant time, which gave the MDOC an opportunity to address the issue. Accordingly, the undersigned concludes that Allen exhausted his claims.

## VI. Recommendation

The undersigned respectfully recommends that this Court deny Defendant's motion for summary judgment.


Dated:  May 13, 2021  /s/ *Maarten Vermaat*
MAARTEN VERMAAT
U. S. MAGISTRATE JUDGE


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).