UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARK ALLEN #351233,

    Plaintiff,

v.

UNKNOWN CORRIGAN, et al.,

    Defendants.

                      /

Case No. 2:20-cv-00173

Hon. Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

**I. Introduction**

This Report and Recommendation (R&R) addresses a summary judgment motion filed by Assistant Deputy Warden (ADW) Corrigan and Resident Unit Manager (RUM) Corey-Spiker. (ECF No. 33.) Plaintiff has not responded to Defendants' summary judgment motion.

The Plaintiff in this case – state prisoner Mark Allen – filed this civil rights action pursuant to 42 U.S.C. § 1983. Allen's unverified complaint alleges that ADW Corrigan and RUM Corey-Spiker failed to protect him from an assault by another prisoner, in violation of his Eighth Amendment rights, while he was confined at the Chippewa Correctional Facility (URF). (ECF No. 1.)

In the opinion of the undersigned, Allen has failed to present evidence establishing a genuine issue of material fact with regard to whether Defendants knew that another prisoner – Prisoner Lackey[1] – presented a threat of harm to Allen

---

[1] Allen's complaint identifies Lackey's prisoner ID number as 281407. The

or that they acted with deliberate indifference by ignoring a known risk of harm to him. Alternatively, Allen's failure to file a responsive pleading shows that he is no longer prosecuting this case. It is respectfully recommended that the Court grant Defendants' motion for summary judgment and dismiss this case.

**II. Factual Allegations**

Allen alleges in his unverified complaint that he was assaulted by other prisoners while confined at other MDOC prisons beginning in 2015. These earlier assaults allegedly took place at the Saginaw Correctional Facility (SRF) and the Michigan Reformatory (MRI). (*Id.*, PageID.2-3.) Allen now attributes these assaults to Prisoner Lackey. (*Id.*) Allen had engaged in one prior fight with Prisoner Lackey in November of 2015 at SRF, and he was found guilty of fighting. The hearing officer rejected Allen's claim of self-defense explaining:

> I find that there was a physical confrontation between prisoners Allen and Lackey. I find that closed fists were swung in anger and/or with intent to injure by both inmates. Prisoner pleads not guilty based on his assertion that he was acting in self-defense. I find his self-defense claim lacks merit. Video clearly shows he went to the cell and removed his coat laying it on the floor in the hallway as he prepared to fight with Lackey. The misconduct report is clear, detailed and unequivocal. It is deemed credible. It is supported by the statements from Officers Griffin and Brooks. It is supported by the physical evidence and by the video footage. I find this case involved the mutual use of force for the purpose of causing injury. Prisoner had opportunity to run but chose to stand his ground and fight. The charge is upheld.

(ECF No. 34-3, PageID.246.)

Allen was transferred to URF on July 21, 2019. (*Id.*, PageID.2-3.) Allen says that, on April 30, 2020, he told ADW Corrigan and RUM Corey-Spiker, who were at that time members of the Security Classification Committee, that he had previously

---

Michigan Department of Corrections (MDOC) Offender Tracking Information System (OTIS) indicates that the prisoner with this number is Billie Ray-Sherman Lackey. *See* https://mdocweb.state.mi.us/otis2/otis2profile. aspx?mdoc Number=281407 (last visited May 23, 2022).

2

been assaulted by Prisoner Lackey. (*Id.*) Allen says that he told Defendants that Lackey was now confined at URF on the East Side, and for that reason it was unsafe for him to be confined on the East Side with Lackey. He says he asked for a transfer to URF's West Side. (*Id.*, PageID.4.)

Allen says Defendant denied his request to move to the West Side of URF and he remained on the East Side of URF. Allen says that later that day, Prisoner Lackey assaulted him with a weapon in the unit bathroom. (*Id.*)

Allen says that on May 1, 2020, the day after the alleged assault, he informed Sergeant Montie that he had been assaulted. Allen included with his complaint a copy of the Michigan Department of Corrections (MDOC) investigation report associated with this incident. (ECF No. 1-5, PageID.28.) The report indicates that facility video showed that Allen had been stabbed by Lackey in a bathroom. (*Id.*)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits,

and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

### IV. Failure to Protect

Allen says that Defendants failed to protect him from Prisoner Lackey. Under the Eighth Amendment, a prison official has a duty to protect an inmate from violence caused by other prisoners. *Wilson v. Sieter*, 501 U.S. 294, 303 (1991); *Nelson v. Overberg*, 999 F.2d 162, 165 (6th Cir. 1993); *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *Roland v. Johnson*, 856 F.2d 764 (6th Cir. 1988); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citations omitted). Recognizing that a prison official has an obligation to protect an inmate from assault by another inmate, the Supreme Court defined deliberate indifference as requiring a showing that the prison official consciously disregarded a substantial risk of serious harm to plaintiff. *Id.* at 839. The Court stated:

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as infliction of punishment.

4

*Id.* at 837.  Thus, in order to support a claim that a prison official failed to protect plaintiff, two conditions must be satisfied:  (1) the inmate must show that a substantial risk of harm was present, and (2) that the defendants, having knowledge of that risk, possessed a culpable state of mind.  *Id.*

In order to support an Eighth Amendment claim, Allen must establish "something more than a lack of ordinary due care, inadvertence, or error; the conduct must instead be 'obdurate' or 'wanton' – exhibiting recklessness or callous neglect." *Nelson,* 999 F.2d at 165; *See also Gibson v. Foltz,* 963 F.2d 851, 853 (6th Cir. 1992); *Walker,* 917 F.2d 1449; *McGhee,* 852 F.2d at 881.  An error of judgment does not subject a prison official to liability.  *Jeffers v. Heavrin,* 10 F.3d 380, 381 (6th Cir. 1993) (errors of judgment are shielded by qualified immunity).

In *Stewart v. Love*, 696 F.2d 43 (6th Cir. 1982), the Sixth Circuit affirmed the dismissal of a prisoner's complaint that prison officials failed to protect him.  In that case, prison officials transferred the plaintiff for a period of six months to another prison cell after the plaintiff informed the officials that he feared for his safety.  The plaintiff was then transferred back to his original cell.  *Id.* at 44.  The plaintiff informed his counselor that he feared for his safety, because he had heard rumors regarding a planned attack.  *Id.*  The court noted that the plaintiff made only general allegations that someone was going to hit him on the head.  *Id.* at 45.  The plaintiff was subsequently assaulted.  *Id.* at 44.  In dismissing the claim, the court found that the defendants were not deliberately indifferent to a known risk of harm to the plaintiff and concluded that the defendants, at most, were guilty of mere

5

negligence which failed to rise to the level of an Eighth Amendment violation. *Id.* at 45.

Defendants argue that Allen cannot establish a genuine issue of fact regarding whether they knew that Lackey presented a risk of harm to Allen. Although Allen stated in his unverified complaint that Lackey was involved in his previous assaults, there is nothing in the record to indicate to Defendants knew that Lackey would assault Allen.

First, Allen's transfer orders did not notify officials at URF of a threat. The MDOC places a SPON (Special Problem Offender Notification) in a prisoner's file to indicate that the prisoner should not be housed with specific prisoners due to a potential risk of harm or other relationships. At the time of Allen's transfer to URF, there were four SPONs in Allen's file. (*See* ECF No. 34-4, PageID.250 (Transfer Order sending Allen from DRF to URF).) The transfer order sending Allen to URF does not list a SPON involving Billie Ray-Sherman Lackey, prisoner number 281407. Because there was no SPON naming Prisoner Lackey in Allen's file at either the time he transferred to URF or on April 30, 2020, when Allen says he told Defendants that Lackey had previously assaulted him, Defendants were not on notice through official MDOC channels of communication that Lackey posed a threat of harm to Allen.

Second, Allen admitted that Defendants were not aware of the risk during his deposition.

```
Q    Okay.  So there's a fighting ticket, but nothing that really
     would have shown them that he -- he was a threat to you?
A    Right.
Q    Okay.
A    And they was not aware of all the other altercations by the
     other individuals --
Q    Right.
A    -- that assaulted me throughout the past.  They wasn't aware
     of it.
Q    Right.  And because of the fact that you didn't have any
     SPON's on you file at that time either, that -- they
     wouldn't have been able to look at your SPON's and see is
     there any problem?
A    Correct; correct.
```

(ECF No. 34-2, PageID.242-243.)

Third, Allen has not responded to Defendants' motion for summary judgment and has not placed admissible evidence in the record before the Court. It is important to note that his complaint was unverified. "[U]nverified complaints, are not considered Rule 56 evidence." *Cooper v. Parker*, No. 2:17-CV-00155, 2019 WL 5273967, at *2 (W.D. Mich. Aug. 29, 2019) (citations omitted), *report and recommendation adopted*, No. 2:17-CV-155, 2019 WL 4686423 (W.D. Mich. Sept. 26, 2019). To qualify as a "verified", a complaint must be executed in a manner that meets the requirements set forth in 28 U.S.C. § 1746. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (a verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment).

In the opinion of the undersigned, Allen has not presented evidence establishing that a genuine issue of material fact exists with respect to his Eight Amendment failure to protect claim. Allen has failed to properly support or address the issues raised by Defendants' motion for summary judgment. The undisputed evidence before the Court indicates that Defendants were not aware of a threat to Allen. Accordingly, pursuant to Fed. R. Civ. P. 56(e)(3), the undersigned recommends that the Court grant Defendants' motion for summary judgment.

## VI. Failure to Prosecute

Allen did not file a response to Defendants' motion for summary judgment, which was filed last November. He also did not seek an extension of time in which to respond. In fact, a review of the docket in this case reveals that Allen last filed a pleading in July 2021. By all appearances, Allen has abandoned the prosecution of this case. The Court has authority to dismiss a case under Fed. R. Civ. P. 41(b) when a plaintiff fails to prosecute his case or to comply with rules, or a court order. It is well settled that the Court has inherent authority to dismiss *sua sponte* an action with prejudice for failure to prosecute. *Link v. Wabash R. Co.*, 370 U.S. 626, 629–30 (1962). As the United States Supreme Court explained:

> The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted. The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts. The power is of ancient origin, having its roots in judgments of nonsuit and non prosequitur entered at common law, e.g., 3 Blackstone, Commentaries (1768), 295—296, and dismissals for want of prosecution of bills in equity, e.g., *id.*, at 451. It has been expressly recognized in Federal Rule of Civil Procedure 41(b), which provides, in pertinent part:

> "(b) Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. * * *
>
> Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits."
>
> Petitioner contends that the language of this Rule, by negative implication, prohibits involuntary dismissals for failure of the plaintiff to prosecute except upon motion by the defendant. In the present case there was no such motion.
>
> We do not read Rule 41(b) as implying any such restriction. Neither the permissive language of the Rule—which merely authorizes a motion by the defendant—nor its policy requires us to conclude that it was the purpose of the Rule to abrogate the power of courts, acting on their own initiative, to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief. The authority of a court to dismiss sua sponte for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.

*Id.* (footnotes omitted).

Accordingly, it is recommended that the Court dismiss this case for failure to prosecute.

### VII.  Recommendation

It is respectfully recommended that the Court grant Defendants' motion for summary judgment and dismiss this case.

Dated:   May 23, 2022                                    /s/ *Maarten Vermaat*
                                                        MAARTEN VERMAAT
                                                        U.S. MAGISTRATE JUDGE

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed.

R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).